IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| SKYLINE MANOR, INC., | ) | |
| | ) | CASE NO. BK14-80934 |
| Debtor(s). | ) | A15-8035 |
| RON ROSS, Chapter 11 Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | CHAPTER 11 |
| | ) | |
| vs. | ) | |
| | ) | |
| SCOTT A. BUCKLES; CLARKE REALTY, LLC; DAN ELLIOTT, INC.; DELK MCNALLY LLP; EAGLE ONE PROPERTIES, LLC; ED FODREA; HARRISON & MOBERLY, L.L.C.; HERITAGE MEDICAL GROUP, INC.; GERRI M. LONG; HOWARD LONG; LOWNDES, DROSDICK, DOSTER, KANTOR& REED, P.A.; JARED K. MCCOWAN; CINDA D. MITCHENER; PARAGON REALTY, LLC; R L RYNARD CONSTRUCTION, INC. a/k/a R L CONSTRUCTION, INC.; KENDALL DWAYNE RHEA; RUBICON FOODS, LLC; WEMAMM 1, LLC; WALNUT INVESTORS, LLC; KIMBERLY R. WILHOIT; and ZIONSVILLE INVESTORS, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

ORDER

Hearing was held in Lincoln, Nebraska, on December 14, 2015, on the motion by certain defendants to dismiss pursuant to Rule 7012(b) (Fil. No. 13). Brandon R. Tomjack and T. Randall Wright appeared for the plaintiff, and Kathryn J. Derr appeared for the moving defendants.

The motion is denied.

The trustee of the Skyline Manor Chapter 11 bankruptcy estate filed this adversary proceeding against 21 defendants to recover approximately $600,000 in allegedly fraudulent transfers. A dozen of the defendants (referred to as the "small-claim defendants" because the amount sought to be recovered from each is no more than $11,000) now move for dismissal from the case

for improper venue under Federal Rule of Bankruptcy Procedure 7012(b) and Federal Rule of Civil Procedure 12(b)(3). All but one of the moving defendants reside in Indiana; the remaining movant resides in Florida.

Proper venue is covered in 28 U.S.C. § 1409, which provides in relevant part:

§ 1409. Venue of proceedings arising under title 11 or arising in or related to cases under title 11
    (a) Except as otherwise provided in subsections (b) and (d), a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending.
    (b) Except as provided in subsection (d) of this section, a trustee in a case under title 11 may commence a proceeding arising in or related to such case to recover a money judgment of or property worth less than $1,250 or a consumer debt of less than $18,675, or a debt (excluding a consumer debt) against a noninsider of less than $12,475, only in the district court for the district in which the defendant resides.

The moving defendants here assert that § 1409(b) is an exception to the general venue provision that a proceeding arising in or related to the bankruptcy case should be filed in the district in which the bankruptcy case is pending, and mandates that the trustee sue these small-claims defendants in the district in which they each reside, as a measure of protection against having to incur significant expenses to defend the action in a distant court.

The trustee points out that Congress limited the applicability of subparagraph (b) to proceedings "arising in or related to" the bankruptcy case, and argues that a fraudulent transfer avoidance action "arises under" the Bankruptcy Code and is not subject to § 1409(b). Such terms are terms of art in the bankruptcy context and have been defined by long-standing case law for the jurisdictional purpose of determining whether a matter is a core proceeding.

> The phrase "arising under" applies to proceedings that involve causes of action expressly created or determined by title 11, such as causes of action to recover fraudulent conveyances and preferential transfers, section 544 avoidance actions, dischargeability proceedings, and similar rights that would not exist had there been no bankruptcy. *Specialty Mills, Inc. v. Citizens State Bank*[,] 51 F.3d 770, 773 (8th Cir. 1995).

*Williams v. Citifinancial Mortgage Co. (In re Williams)*, 256 B.R. 885, 891 (B.A.P. 8th Cir. 2001).

"The phrase 'arising in' generally refers to administrative matters that, although not expressly created by title 11, would have no existence but for the fact that a bankruptcy case was filed." *Id.* (citing *Menk v. Lapaglia (In re Menk)*, 241 B.R. 896, 909 (B.A.P. 9th Cir. 1999)).

>     A proceeding is "related to" a bankruptcy case if "the outcome of that proceeding could conceivably have any effect on the estate being administered in the bankruptcy." *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770, 774 (8th Cir. 1995) (quoting *Dogpatch Props., Inc. v. Dogpatch U.S.A., Inc. (In re Dogpatch U.S.A., Inc.)*, 810 F.2d 782, 786 (8th Cir. 1987)). This broad test is met if the proceeding "could alter the debtor's rights, liabilities, options, or freedom of action . . . and which in any way impacts upon the handling and administration of the bankruptcy estate." *Id.* (ellipsis in original) (quoting I*n re Dogpatch U.S.A.*, 810 F.2d at 786).

*Cutcliff v. Reuter*, 791 F.3d 875, 881-82 (8th Cir. 2015).

The trustee's complaint to avoid and recover fraudulent transfers was brought under §§ 544(b)(1), 548(a)(1)(A) and (B), 550, and the Nebraska Uniform Fraudulent Transfer Act. His statutory authority to do so is explicitly bestowed by the Bankruptcy Code. While state-law procedures for avoiding such transfers exist outside of bankruptcy, the basis here is the existence of the bankruptcy case because the Bankruptcy Code is what gives teeth to the trustee's power. The avoidance of fraudulent transfers is a proceeding that arises under Title 11. As such, § 1409(b) does not apply.

While there is authority for each side's position on the applicability of § 1409(b), the weight of the authority favors the trustee. The plain language of the statute leads to this conclusion.

The principles of statutory construction are familiar: "The Supreme Court has 'stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.'" *United States v. I.L.*, 614 F.3d 817, 820 (8th Cir. 2010) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992)). "'When the words of a statute are unambiguous, then, this first canon is also the last: "judicial inquiry is complete."'" *Id.* (quoting *Germain*, 503 U.S. at 254 and *Rubin v. United States*, 449 U.S. 424, 430 (1981)). The United States Supreme Court recently reiterated that standard:

>     If the statutory language is plain, we must enforce it according to its terms. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010). But oftentimes the "meaning – or ambiguity – of certain words or phrases may only become evident when placed in context." [*FDA v.] Brown & Williamson [Tobacco Corp.*], 529 U.S. [120,] 132 [(2000)]. So when deciding whether the language is plain, we must read the words "in their context and with a view to their place in the overall statutory scheme." *Id.*, at 133 (internal quotation marks omitted). Our duty, after all, is "to construe statutes, not isolated provisions." *Graham County Soil and Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 290 (2010) (internal quotation marks omitted).

*King v. Burwell*, ___ U.S. ___, 135 S. Ct. 2480, 2489 (2015).

Only if the statutory provision is ambiguous – that is, susceptible to more than one reasonable interpretation – does the court look to legislative history and other authorities to determine congressional intent. *Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc.*, 651 F.3d 857, 863 (8th Cir. 2011).

The courts that have found ambiguity in § 1409 have done so based on the court's confusion over why "arising under" would have been included in sub-paragraph (a) but not in sub-paragraph (b) and the perception that Congress could not possibly have intended to exclude it, so the courts "fix" that legislative oversight by reading "arising under" into § 1409(b). *See Muskin, Inc. v. Strippit Inc. (In re Little Lake Indus., Inc.)*, 158 B.R. 478 (B.A.P. 9th Cir. 1993) and *Miller v. Hirn (In re Raymond)*, Adv. No. 09-6177, 2009 WL 6498170 (Bankr. N.D. Ga. June 17, 2009). *See also N1 Creditors' Trust v. Crown Packaging Corp. (In re Nukote Int'l, Inc.)*, 457 B.R. 668 (Bankr. M.D. Tenn. 2011) (decrying "rigid distinctions" between "arising under" and "arising in" and following *Little Lake Industries*' accommodation of "overlap" between the two).

"Reliance on context and structure in statutory interpretation is a 'subtle business, calling for great wariness lest what professes to be mere rendering becomes creation and attempted interpretation of legislation becomes legislation itself.'" *King v. Burwell*, 135 S. Ct. at 2495-96 (quoting *Palmer v. Massachusetts*, 308 U.S. 79, 83 (1939)). Those decisions which read the term "arising under" into § 1409(b) blur the line between statutory interpretation and statutory creation. As noted by the Kansas bankruptcy court, there were opportunities for Congress, including with the BAPCPA amendments to § 1409, to add that language to subparagraph (b) if they were so inclined, but they did not. *Redmond v. Gulf City Body & Trailer Works, Inc. (In re Sunbridge Capital, Inc.)*, 454 B.R. 166, 173 (Bankr. D. Kan. 2011).

Instead, the more reasonable approach would be to apply the statute as written, with the understanding that Congress presumably knows what it is doing:

> [W]hen "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 452 (U.S.2002). Here, it must then be presumed that Congress acted purposefully with its disparate inclusion and exclusion of the term "arising under", from subsections (a) and (b). The disparate use of an unambiguous and well defined bankruptcy term of art must be interpreted as an indication of Congressional intent that preference actions be excluded from the venue exception in subsection (b), where it included the same language in the general venue provision in subsection (a).

*Schwab v. Peddinghaus Corp. (In re Excel Storage Prods, L.P.)*, 458 B.R. 175, 181 (Bankr. M.D. Pa. 2011).

  Remaining mindful of the separation of legislative and judicial duties, and in reading the plain language of the statute as it is written, it is clear that § 1409(b) does not apply to the trustee's fraudulent transfer actions in this adversary proceeding.

  For the reasons discussed above, the defendants' motion will be denied.

  IT IS ORDERED: The motion by certain defendants to dismiss pursuant to Rule 7012(b) (Fil. No. 13) is denied.

  DATED: December 18, 2015.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
 *Kathryn J. Derr
 Brandon R. Tomjack
 T. Randall Wright
 U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.