IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | |
| SKYLINE MANOR, INC., ) | |
| ) | CASE NO. BK14-80934 |
| Debtor(s). ) | A15-8035 |
| RON ROSS, Chapter 11 Trustee, ) | |
| ) | |
| Plaintiff, ) | CHAPTER 11 |
| ) | |
| vs. ) | |
| ) | |
| SCOTT A. BUCKLES; CLARKE ) | |
| REALTY, LLC; DELK McNALLY, LLP; ) | |
| EAGLE ONE PROPERTIES, LLC; DAN ) | |
| ELLIOTT, INC.; ED FODREA; HARRISON ) | |
| & MOBERLY, L.L.C.; HERITAGE ) | |
| MEDICAL GROUP, INC.; GERRI M. LONG; ) | |
| HOWARD LONG; JARED K. McCOWAN; ) | |
| CINDA D. MITCHENER; PARAGON ) | |
| REALTY, LLC; KENDALL DWAYNE ) | |
| RHEA; RUBICON FOODS, LLC; R L ) | |
| RYNARD CONSTRUCTION, INC.; ) | |
| WEMAMM 1, LLC; KIMBERLY R. ) | |
| WILHOIT; WALNUT INVESTORS, LLC; ) | |
| ZIONSVILLE INVESTORS, INC., ) | |
| ) | |
| Defendants. ) | |

## ORDER

This matter is before the court on the plaintiff's motions for partial summary judgment against defendants Clarke Realty, LLC, Rubicon Foods, LLC, and Dan Elliott, Inc. (Fils. No. 101, 104 and 107). The plaintiff's objection (Fil. No. 143) to one of the defendants' affidavits is also before the court. T. Randall Wright, Brandon R. Tomjack, and Nicholas A. Buda represent the plaintiff, and Kathryn J. Derr represents the defendants. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motions were taken under advisement without oral arguments.

The motions are granted.

The plaintiff is the Chapter 11 trustee of the Skyline Manor, Inc., bankruptcy estate. He filed this adversary proceeding to recover pre-petition payments of money to the defendants that the trustee alleges are fraudulent transfers. The trustee now seeks summary judgment on certain legal issues in Count IV of the complaint, which seeks the avoidance and recovery of constructively

fraudulent transfers pursuant to 11 U.S.C. §§ 544(b)(1) and 550 and the Nebraska Uniform Fraudulent Transfer Act, Neb. Rev. Stat. § 36-701, *et seq.*

## I.  Summary Judgment Standard

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The movant bears the initial responsibility of informing the court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the non-movant must respond by submitting evidentiary materials that set out specific facts showing the existence of a genuine issue of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011).

On a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are the province of the fact-finder at trial and not of the judge at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250, 255.

## II.  Factual Findings

The following facts concerning Clarke Realty are uncontroverted:

1.  Clarke Realty is an Indiana limited liability company with its principal place of business in Fishers, Indiana.

2.  Clarke Realty owns and operates commercial real estate, including real estate located at 9114 Technology Lane, Fishers, Indiana ("Leased Premises").

3.  On or about September 1, 2012, Clarke Realty, as landlord, and BVM Management, Inc. ("BVM"), as tenant, entered into a lease agreement for the Leased Premises ("Lease Agreement").

      4. Pursuant to the terms of the Lease Agreement, BVM was required, among other things, to pay monthly installments to Clarke Realty in exchange for BVM's use of the Leased Premises, including rent and other amounts for common-area maintenance, operating expenses, and taxes.

      5. BVM is in the business of managing and co-managing health care and residential facilities. In 2012, BVM assumed management of Skyline Manor, Inc. ("Debtor"), from AmeriCare Communities III, LLC ("AmeriCare"), when AmeriCare merged into BVM.

      6. As of May 2014, BVM managed or co-managed at least 54 healthcare facilities in five states with those facilities having gross revenues of more than $200 million annually. Debtor's facility – Skyline Manor – is just one of the 54 facilities managed by BVM.

      7. In exchange for managing Debtor's facility, Debtor paid BVM a management fee pursuant to the parties' management agreement in an amount equal to approximately five percent of Debtor's gross revenue for any particular month.

      8. John Bartle ("Bartle") testified that he served as the Manager of Loss Control and Risk Mitigation for BVM and as Debtor's Chief Restructuring Officer. BVM and Debtor also share a common board of directors. However, BVM had no ownership control over Debtor. BVM merely managed Debtor's facility in exchange for a management fee, and reported Debtor on its consolidated 990 Form for federal tax reporting purposes.

      9. Debtor is not Clarke Realty's tenant. However, on or about July 8, 2013, Debtor paid to Clarke Realty and Clarke Realty received and subsequently negotiated a check from Debtor in the amount of $9,724.06 for BVM's rent regarding the Leased Premises for the month of June 2013 ("Clarke Realty Transfers").

      10. At the time of the Clarke Realty Transfers, Clarke Realty was unaware of Debtor's existence, the nature of Debtor's business, the nature of Debtor's assets and liabilities, or whether BVM provided services to Debtor.

      11. There was at least one creditor of Debtor whose claim arose before the Clarke Realty Transfers, including, but not limited to, Omnicare Pharmacy which obtained a judgment against Debtor in 2011 for approximately $360,000.

      12. There is at least one actual holder of an allowed unsecured claim pursuant to 11 U.S.C. § 502 who would have standing to assert a claim for relief under the Nebraska Uniform Fraudulent Transfer Act ("NUFTA").

      13. On May 8, 2014, Debtor filed a petition for relief under Chapter 11 of Title 11 of the United States Code.

      14. On May 30, 2014, the plaintiff was appointed as Chapter 11 trustee.

15.  On September 10, 2015, the plaintiff filed this adversary proceeding, in part, against Clarke Realty to avoid and recover the Clarke Realty Transfers pursuant to Bankruptcy Code §§ 544(b)(1) and 550, and Neb. Rev. Stat. § 36-701, *et seq.*

The following facts concerning Rubicon Foods, LLC, are uncontroverted:

1.  Rubicon Foods is an Indiana limited liability company with its principal place of business in Indianapolis, Indiana.

2.  Steven Hockemeyer is a part owner and the managing partner of Rubicon Foods.

3.  Rubicon Foods is in the food service industry, specifically manufacturing and marketing food mixes for individuals with texture-modified needs, such as puree diets.

4.  At all relevant times hereto, Rubicon Foods leased real property located at 7320 East 86th Street, Suite 400, Indianapolis, Indiana ("Leased Premises"), from East 86th Street Partners LLC.

5.  On or about February 23, 2012, Rubicon Foods, as sub-landlord, and Americare Companies, Inc. ("Americare"), as sub-tenant, entered into a sublease whereby Rubicon Foods would sublease to Americare approximately 2,467 square feet of office space at the Leased Premises (the "Sublease").

6.  Pursuant to the Sublease, Americare was required to pay certain sums for rent and utilities to Rubicon Foods on a monthly basis. Specifically, Americare was required to pay Rubicon Foods rent in the amount of $3,083.75 per month from March 1, 2012, through February 29, 2013, and $3,186.54 from March 1, 2013, through February 29, 2014. Americare was also responsible for paying forty percent (40%) of the "Premises Expense" per month as that term is defined in the Sublease and the associated "Master Lease" referenced therein.

7.  Americare was a division – or subsidiary – of BVM Management, Inc. ("BVM"). Americare provided financial consulting and loan structuring services for BVM and its affiliates. Specifically, Americare provided consulting services in about seven states for developers of affordable housing, assisted living, independent living, and other facilities.

8.  Americare originally had a management contract with Debtor whereby Americare managed Debtor's facility in exchange for a management fee. However, Americare merged into BVM in 2012 and BVM assumed the management contract between Debtor and Americare.

9.  Each month, beginning on March 31, 2012, Rubicon Foods would invoice Americare for its monthly share of rent and other expenses under the Sublease. Each invoice generated by Rubicon Foods was addressed to "AmeriCare Companies, 7320 E. 86th Street, Suite 400, Indianapolis, IN 46256."

10. Debtor is not Rubicon Foods' tenant. However, Debtor transferred, and Rubicon Foods received, the following funds from Debtor totaling $37,505.32 for Americare's rent (the "Rubicon Foods Transfers"):

(a) Check No. 1082 from Debtor to Rubicon Foods dated February 22, 2012, in the amount of $3,083.75;

(b) Check No. 1096 from Debtor to Rubicon Foods dated March 1, 2012, in the amount of $3,083.75;

(c) Check No. 1172 from Debtor to Rubicon Foods dated April 19, 2012, in the amount of $134.62;

(d) Check No. 1177 from Debtor to Rubicon Foods dated April 30, 2012, in the amount of $3,083.75;

(e) Check No. 1223 from Debtor to Rubicon Foods dated June 1, 2012, in the amount of $3,083.75;

(f) Check No. 1224 from Debtor to Rubicon Foods dated June 1, 2012, in the amount of $271.99;

(g) Check No. 1298 from Debtor to Rubicon Foods dated August 1, 2012, in the amount of $3,083.75;

(h) Check No. 1302 from Debtor to Rubicon Foods dated August 6, 2012, in the amount of $130.51;

(i) Check No. 1330 from Debtor to Rubicon Foods dated August 31, 2012, in the amount of $3,083.75;

(j) Check No. 1367 from Debtor to Rubicon Foods dated October 1, 2012, in the amount of $3,083.75;

(k) Check No. 1361 from Debtor to Rubicon Foods dated September 28, 2012, in the amount of $434.70;

(l) Check No. 1386 from Debtor to Rubicon Foods dated October 19, 2012, in the amount of $242.50;

(m) Check No. 1397 from Debtor to Rubicon Foods dated November 1, 2012, in the amount of $3,083.75;

(n) Check No. 1398 from Debtor to Rubicon Foods dated November 1, 2012, in the amount of $111.07;

(o) Check No. 1406 from Debtor to Rubicon Foods dated November 9, 2012, in the amount of $184.30;

(p) Check No. 1435 from Debtor to Rubicon Foods dated November 30, 2012, in the amount of $3,083.75;

(q) Check No. 1434 from Debtor to Rubicon Foods dated November 30, 2012, in the amount of $113.73;

(r) Check No. 1451 from Debtor to Rubicon Foods dated December 13, 2012, in the amount of $249.13;

(s) Check No. 1879 from Debtor to Rubicon Foods dated January 22, 2013, in the amount of $3,083.75;

(t) Check No. 1877 from Debtor to Rubicon Foods dated January 22, 2013, in the amount of $145.21;

(u) Check No. 3103 from Debtor to Rubicon Foods dated April 11, 2013, in the amount of $131.94;

(v) Check No. 1060 from Debtor to Rubicon Foods dated May 29, 2013, in the amount of $107.48;

(w) Check No. 3167 from Debtor to Rubicon Foods dated May 29, 2013, in the amount of $616.24; and

(x) Check No. 3193 from Debtor to Rubicon Foods dated June 20, 2013, in the amount of $267.63.

11. At the time of the Rubicon Foods Transfers, Rubicon Foods was unaware of Debtor's existence, the financial condition of Debtor, of BVM's existence, or of Americare's business structure.

12. There was at least one creditor of Debtor whose claim arose before the Rubicon Foods Transfers, including, but not limited to, Omnicare Pharmacy which obtained a judgment against Debtor in 2011 for approximately $360,000.

13. There is at least one actual holder of an allowed unsecured claim pursuant to 11 U.S.C. § 502 who would have standing to assert a claim for relief under the Nebraska Uniform Fraudulent Transfer Act ("NUFTA").

14. On May 8, 2014, Debtor filed a petition for relief under Chapter 11 of Title 11 of the United States Code.

15. On May 30, 2014, the plaintiff was appointed as Chapter 11 trustee.

16. On September 10, 2015, the plaintiff filed this adversary proceeding, in part, against Rubicon Foods to avoid and recover the Rubicon Foods Transfers pursuant to 11 U.S.C. §§ 544(b)(1) and 550, and Neb. Rev. Stat. § 36-701, *et seq.*

The following facts concerning Dan Elliott, Inc., are uncontroverted:

1. Dan Elliott, Inc. ("Dan Elliott"), is an Indiana corporation with its principal place of business in Indianapolis, Indiana.

2. Dan Elliott is in the residential design and construction business.

3. In the latter part of 2011, John and Rebecca Bartle (collectively, the "Bartles") hired Dan Elliott to design and construct a 264-square-foot addition to their personal residence located at 9155 Sargent Manor Court, Indianapolis, Indiana.

4. Specifically, the Bartles hired Dan Elliott to construct a multiple use hobby building – or craft room – for Mrs. Bartle at the Bartles' personal residence. Dan Elliott constructed the addition to the Bartles' residence, which addition included a kitchenette, bathroom, work bench, and space for a sleeping quarters and/or office.

5. Dan Elliott completed the addition to Bartles' personal residence in July of 2012.

6. Dan Elliott was paid for his work on Bartles' personal residence with Debtor's funds. Specifically, Debtor transferred, and Dan Elliott received, the following funds from Debtor totaling $31,953.46 ("Dan Elliott Transfers"):

    (a) Check No. 1043 from Debtor to Dan Elliott negotiated January 19, 2012, in the amount of $5,000;

    (b) Check No. 1119 from Debtor to Dan Elliott negotiated March 22, 2012, in the amount of $10,000;

    (c) Check No. 1128 from Debtor to Dan Elliott negotiated April 23, 2012, in the amount of $10,971.58; and

    (d) Check No. 1285 from Debtor to Dan Elliott negotiated August 2, 2012, in the amount of $5,981.88.

7. At the time of the Dan Elliott Transfers, Dan Elliott was unaware of Debtor's existence, the nature of Debtor's business, or what the Bartles did for a living.

8. There was at least one creditor of Debtor whose claim arose before the Dan Elliot Transfers, including, but not limited to, Omnicare Pharmacy which obtained a judgment against Debtor in 2011 for approximately $360,000.

9. There is at least one actual holder of an allowed unsecured claim pursuant to 11 U.S.C. § 502 who would have standing to assert a claim for relief under the Nebraska Uniform Fraudulent Transfer Act ("NUFTA").

10. On May 8, 2014, Debtor filed a petition for relief under Chapter 11 of Title 11 of the United States Code.

11. On May 30, 2014, Plaintiff was appointed as Chapter 11 trustee.

12. On September 10, 2015, Plaintiff filed this adversary proceeding, in part, against Dan Elliott to avoid and recover the Dan Elliott Transfers pursuant to 11 U.S.C. §§ 544(b)(1) and 550, and Neb. Rev. Stat. § 36-701, *et seq.*

### III.  Legal Discussion

    A.    Clarke Realty

The Bankruptcy Code provides the trustee with authority to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim[.]" 11 U.S.C. § 544(b)(1). "Applicable law" in this instance is the Nebraska Uniform Fraudulent Transfer Act. The advantage for the trustee, standing in the shoes of an unsecured claim holder, is a four-year look-back period.

Transfers are fraudulent under Neb. Rev. Stat. § 36–706(a) when two things are proved. The creditor must prove: (1) the debtor did not receive reasonably equivalent value in the exchange; and (2) the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer.

*United States v. Estate of Kime*, 950 F. Supp. 950, 955 (D. Neb. 1996).

Because the language of NUFTA and the fraudulent transfer section of the Bankruptcy Code are similar, courts commonly use the same analysis under both statutes. *Kaler v. Red River Commodities, Inc. (In re Sun Valley Prods., Inc.)*, 328 B.R. 147, 155 (Bankr. D.N.D. 2005). "To succeed on a claim under 11 U.S.C. § 548(a)(1)(B)(I), the trustee must demonstrate, by a preponderance of the evidence, that payments a debtor received were not in exchange for reasonably equivalent value." *Id.* at 156 (citing *Meeks v. Don Howard Charitable Remainder Trust (In re S. Health Care of Ark., Inc.)*, 309 B.R. 314, 319 (B.A.P. 8th Cir. 2004)). This necessitates an analysis of whether (1) value was given; (2) it was given in exchange for the transfer; and (3) what was transferred was reasonably equivalent to what was received. *Id.*

At issue here is what value, if any, the debtor received from its payment of $9,724.06 to Clarke Realty for BVM's rent of the leased premises in Fishers, Indiana, for the month of June 2013. Clarke Realty argues that payment was made in the ordinary course of business of the parties, and although the debtor and Clarke Realty had no contract, the relationship between the debtor and BVM was so close that the transfer could be said to be "in the ordinary course of business." Clarke Realty also argues that the debtor and BVM shared such an identity of interests that any benefit to BVM under the lease also benefitted the debtor. Finally, Clarke Realty argues that the debtor received an indirect benefit from the transfer.

Under the Bankruptcy Code, the "ordinary course of business" defense applies to alleged preferential transfers, but not to alleged fraudulent transfers. Clarke Realty relies on Neb. Rev. Stat. § 36-709(f)[1] for the applicability of the defense to the allegations made by the trustee. Of particular noteworthiness is the language in that subsection which makes the "ordinary course of business"

---

[1]That subsection provides:

(f) A transfer is not voidable under subsection (b) of section 36-706:
    (1) to the extent the insider gave new value to or for the benefit of the debtor after the transfer was made unless the new value was secured by a valid lien;
    (2) if made in the ordinary course of business or financial affairs of the debtor and the insider; or
    (3) if made pursuant to a good faith effort to rehabilitate the debtor and the transfer secured present value given for that purpose as well as an antecedent debt of the debtor.

Neb. Rev. Stat. Ann. § 36-709(f).

defense applicable only to transfers that would be fraudulent under Neb. Rev. Stat. § 36-706(b).[2] That subsection refers only to transfers to insiders. The trustee here has not alleged that any of the transfers were to insiders, so Clarke Realty's use of this defense is unavailing.

The satisfaction of an antecedent debt of the debtor may constitute "equivalent value," but the satisfaction of a third party's debt normally does not. *Pummill v. Greensfelder, Hemker & Gale (In re Richards & Conover Steel, Co.)*, 267 B.R. 602, 613 (8th Cir. B.A.P. 2001) (citing *Dietz v. St. Edward's Catholic Church (In re Bargfrede)*, 117 F.3d 1078, 1080 (8th Cir. 1997) (finding no reasonably equivalent value when husband pays a spouse's debt from his separate assets)); *Leonard v. Norman Vinitsky Residuary Trust (In re Jolly's, Inc.)*, 188 B.R. 832, 842 (Bankr. D. Minn. 1995) (holding that transfers made solely for benefit of third party do not furnish reasonably equivalent value); and *Biggs v. United States Nat'l Bank*, 11 B.R. 524, 527 (D. Neb. 1980) (same)).

The focus is on what the debtor surrendered and what he received, regardless of any benefit flowing to a third party. *Richards & Conover Steel*, 267 B.R. at 614, n.4. "If the exchange preserves or enhances the debtor's net worth, then the transfer was not fraudulent even if a third party was the intended beneficiary of the transfer." *Id.* (citing *Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979, 992 (2d Cir. 1981)).

Clarke Realty's "identity of interests" argument arises from long-standing bankruptcy case law on transfers by the debtor for the benefit of third parties, which normally do not constitute reasonably equivalent value. "A clear distinction from this rule exists, however, if the debtor and the third party are so related or situated that they share an 'identity of interests,' because what benefits one will, in such case, benefit the other to some degree." *Garrett v. Falkner (In re Royal Crown Bottlers of N. Alabama, Inc.)*, 23 B.R. 28, 30 (Bankr. N.D. Ala. 1982) (footnote omitted).

Contrary to the defendant's vague assertions of an "identity of interests" between the parties, the owner of Clarke Realty stated in her deposition that, at the time of the transfer, she had never even heard of Skyline Manor and had no knowledge of it or its relationship with BVM. Therefore, the debtor and the transferee could not have an "identity of interests."

With respect to the defendant's "indirect benefits" argument, under which an indirect benefit to the debtor may constitute reasonably equivalent value, the benefit must be tangible. *Richards & Conover Steel, Co.*, 267 B.R. at 612–13. To support its argument, Clarke Realty submitted a single-page document purporting to show cash transfers between the debtor and BVM between December 2011 and April 2014. The trustee has objected to the admissibility of that document. That objection

---

[2]That subsection provides:

    (b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider knew or reasonably should have known that the debtor was insolvent.

Neb. Rev. Stat. Ann. § 36-706.

is sustained, as the document completely lacks foundation and is hearsay. Therefore, it will not be considered in connection with this motion.

The defendant has failed to meet its burden of coming forth with specific facts establishing a genuine issue of material fact for trial. Accordingly, the plaintiff's motion for partial summary judgment will be granted.

### B.     Rubicon Foods

In response to the motion for partial summary judgment, Rubicon Foods argues that the "ordinary course of business" defense protects it from the trustee's claims. As noted above, the defense is inapplicable to the transfers alleged in the trustee's complaint.

Rubicon Foods also invokes the "identity of interests" and "indirect benefits" defenses to the motion. Again, the evidence before the court in the form of the deposition of Rubicon Foods' managing partner indicates that Rubicon Foods had no knowledge of Skyline Manor or BVM until this lawsuit was filed. This clearly does not support Rubicon Foods' position that it and the debtor were so closely related that they share an identity of interests. Likewise, the defendant has provided no evidence of a tangible indirect benefit to the debtor from the transfers. The accounting document on which the defendant relies is not admitted for purposes of this motion because it lacks foundation and is hearsay.

Because the defendant has failed to meet its burden of establishing a genuine issue of material fact for trial, the plaintiff's motion for partial summary judgment will be granted.

### C.     Dan Elliott, Inc.

Dan Elliott, Inc., does not oppose summary judgment on the issue of whether the debtor received reasonably equivalent value, whether directly or indirectly, from the transfers to this defendant.

## IV. Conclusion

Under NUFTA, a transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation. Neb. Rev. Stat. § 36-706(a). Such a transfer made to a present or future creditor is fraudulent if the debtor made the transfer or incurred the obligation (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (ii) intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due. Neb. Rev. Stat. § 36-705(a).

In this case, the trustee has established that the debtor did not receive reasonably equivalent value for the transfers to these defendants. He is entitled to summary judgment on this element of his cause of action. The elements of insolvency and, if applicable, actual intent to hinder, delay, or defraud remain issues for trial.

IT IS ORDERED: The plaintiff's objection (Fil. No. 143) to the affidavit of Kathryn Derr (Fil. No. 138) is sustained. The plaintiff's motion for partial summary judgment against defendant Clarke Realty, LLC (Fil. No. 101) is granted. The plaintiff's motion for partial summary judgment against defendant Rubicon Foods, LLC (Fil. No. 104) is granted. The plaintiff's motion for partial summary judgment against defendant Dan Elliott, Inc. (Fil. No. 107) is granted. Because this order does not does not fully dispose of the issues in this case, it is not a final order for purposes of appeal. Fed. R. Civ. P. 54(b) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7054(a)).

DATED: February 16, 2017.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    *T. Randall Wright
    *Brandon R. Tomjack
    *Nicholas A. Buda
    Kathryn J. Derr
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.